IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE A. ECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-330 Erie |
| | ) | |
| WHIRLEY INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

Pending before the Court is a motion for summary judgment filed by the Defendant. ECF No. 23. For the reasons that follow, that motion will be granted.

**I.  BACKGROUND**

Defendant Whirley Industries, Inc. ("Whirley"), is in the business of designing, manufacturing and selling specialty cups, straws and related products. ECF Nos. 25 & 41 at ¶ 2. Several of Whirley's products incorporate some form of artwork. *Id.* at ¶ 3. While some customers either supply their own artwork or have Whirley obtain artistic designs from alternative production sources, others rely on Whirley to create artistic designs for their products. *Id.* Individuals employed by Whirley's Art Department typically work on either "production art" or "creative art." *Id.* at ¶ 4. Employees who work on production art typically work with designs that have been already been submitted by customers. *Id.* at ¶ 5. In contrast, employees who work on creative art generally create artistic designs in connection with specific products without the benefit of predetermined templates. *Id.* at ¶ 4.

Plaintiff Christine A. Eck ("Eck") was born on May 4, 1963. ECF No. 39 at 36. On December 12, 1994, she was hired to be Whirley's Creative Art Director. ECF No. 37 at 55. Terry Lyle ("Lyle"), the Manager of Whirley's Art Department, was Eck's immediate supervisor. ECF Nos. 25 & 41 at ¶ 7. During the course of her employment with Whirley, approximately 80% of Eck's time was spent performing tasks related to creative art. *Id.* at ¶ 9. She spent the remainder of her time assisting with the preparation of production art, attending meetings, and performing other work-related duties. *Id.*

1

At some point in 1997 or 1998, Eck began to experience pain and numbness in her feet. *Id.* at ¶ 28. She later experienced vision problems, numbness in her hands, and balance-related difficulties. *Id.* at ¶¶ 28-29. Medical personnel at the Cleveland Clinic in Cleveland, Ohio, ultimately determined that Eck was suffering from multiple sclerosis. *Id.* at ¶ 29. Eck told Lyle about the diagnosis. *Id.* at ¶ 30.

In 2000, Eck complained about the condition of Whirley's parking lot, claiming that she had fallen several times while walking to her workplace. *Id.* at ¶ 35. Whirley responded by providing Eck with a permit allowing her to park her vehicle in close proximity to the entrance that she used to access the building. *Id.* at ¶ 36. The permit alleviated Eck's concerns about the condition of the parking lot, since she no longer needed to walk across it on a daily basis. *Id.* at ¶ 37.

Around the beginning of 2006, Eck's medical condition began to deteriorate. *Id.* at ¶ 38. Cleo A. Nixon ("Nixon"), Whirley's Payroll and Benefits Supervisor, informed Eck of her rights under the Family and Medical Leave Act of 1993 ("FMLA") [29 U.S.C. § 2601 *et seq.*] in a letter dated February 3, 2006. ECF No. 30 at 24. Nixon's letter provided details as to how Eck could invoke her rights under the FMLA. ECF No. 30 at 24-26.

In a letter dated June 9, 2006, Dr. Mary R. Rensel, Eck's treating neurologist, and Kathleen M. Schwetz ("Schwetz"), a registered nurse employed by the Cleveland Clinic, stated that Eck would be unable to work between June 14, 2006, and August 11, 2006, because of an exacerbation of her multiple sclerosis. *Id.* at 20. Eck formally requested that Whirly grant her a short-term disability leave during that period of time, and her request was granted.[1] ECF No. 41-5 at 11-12. In a letter dated July 26, 2006, Dr. Rensel stated that Eck would need to remain on medical leave until August 29, 2006, at which point she would be re-examined. ECF No. 30 at 19. In response to Dr. Rensel's letter, Eck was permitted to remain on leave for an additional two weeks. ECF Nos. 41 & 44 at ¶ 7.

After a functional capacity evaluation conducted on August 29, 2006, Dr. Rensel completed an evaluation form indicating that Eck would be able to return to work on September 5, 2006, without restrictions as long as she was not expected to work more than eight hours per

---

[1] Eck apparently received short-term disability benefits during her leave of absence. ECF No. 30 at 21-23.

day and five days per week.[2] ECF No. 30 at 17-18. The next day, however, Eck was informed that her position with Whirley was being eliminated. *Id.* at 11. In a letter to Eck dated August 30, 2006, Rita M. Bevevino ("Bevevino"), Whirley's Human Resources Manager, stated:

> Due to a significant reduction in the amount of creative artwork, Whirley Industries, Inc. has been forced to make the difficult decision to eliminate your job. The purpose of this letter is to inform you that your employment with Whirley Industries will end on Wednesday, August 30, 2006.

*Id.* The letter was handed to Eck during a meeting conducted in Bevevino's office. ECF No. 32 at 45. During the course of the meeting, Lyle explained to Eck that he had decided to eliminate her position because of a decrease in the demand for creative artwork. *Id.* at 46.

In November 2006, Eck applied for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act [42 U.S.C. §§ 1381-1383f]. ECF Nos. 25 & 41 at ¶ 39. Her application was denied on November 9, 2006, because the value of her financial resources was in excess of Title XVI's eligibility limits. ECF No. 28 at 91-92. On January 30, 2007, Eck applied for disability insurance benefits ("DIB") under Title II of the Social Security Act [42 U.S.C. §§ 401-433], alleging that she had become disabled on June 14, 2006. ECF No. 29 at 15. The application was administratively denied on June 11, 2007. ECF No. 29 at 52-56. Eck appealed this denial on August 2, 2007, by submitting additional information about her medical condition. *Id.* at 57-63. On August 12, 2008, the Social Security Administration ("SSA") reversed its earlier decision and determined that Eck had become disabled on June 14, 2006. ECF Nos. 25 & 41 at ¶ 46. Although Title II's statutory "waiting period" prevented her from receiving Social Security disability benefits for the first five months of her period of disability, Eck was awarded retroactive benefits dating back to December 2006. 42 U.S.C. § 423(a)(1)(E), (c)(2); ECF No. 29 at 64. This award was consistent with Eck's onset date of June 14, 2006.

Eck commenced this action against Whirley on November 26, 2008.[3] Whirley filed a motion for summary judgment on July 22, 2010. ECF No. 23. Oral argument was held on December 7, 2010. ECF No. 49. The matter is now ripe for disposition.

---

[2] Dr. Rensel testified on March 16, 2010, that she had not performed the functional capacity evaluation herself. ECF No. 38 at 13. It is not entirely clear who actually evaluated Eck on August 29, 2006.
[3] Eck filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") during the spring of 2007, alleging that Whirley had discharged her in violation of the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*]. ECF No. 29 at 88-97. The charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC") in order to exhaust Eck's administrative remedies under the Pennsylvania Human Relations Act ("PHRA") [43 PA. STAT. § 951 *et seq.*]. On August 30, 2008, the EEOC sent Eck a written

3

**II. STANDARD OF REVIEW**

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Township*, 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. *Celotex Corp.*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories in order to show that there is a genuine issue of material fact for trial. *Id.* at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

**III. DISCUSSION**

Eck contends that Whirley violated the ADA by discharging her because of her disability and subjecting her to a "hostile work environment." ECF No. 1 at ¶¶ 45-57. She also claims that Whirley retaliated against her for engaging in protected activity. *Id.* at ¶¶ 58-60. These claims will be addressed in sequential order.

---

notice indicating that no further administrative action would be taken with respect to her charge of discrimination. ECF No. 1 at ¶ 2.

### A. The Discriminatory Discharge Claim

Whirley contends that summary judgment is appropriate because Eck has failed to make out a *prima facie* case. ECF No. 24 at 10-15. In order to establish a *prima facie* case of discrimination under the ADA, Eck must show that: (1) she was "disabled" within the meaning of the ADA; (2) she was otherwise otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations by Whirley; and (3) she suffered an adverse employment action for discriminatory reasons. *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999). Whirley argues that Eck should be estopped from contending that she was "qualified" to perform the essential functions of her position as of August 30, 2006, given her successful representations to the SSA that she had been "disabled" as of June 14, 2006. ECF No. 24 at 10-15. Whirley contends that it is fundamentally inconsistent for Eck to argue that she was both "disabled" within the meaning of the Social Security Act (*i.e.*, *unable* to perform her job duties) and "qualified" within the meaning of the ADA (*i.e.*, *able* to perform the "essential functions" of her position) at the time of her discharge.[4] *Id.*

In *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 802-803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), the Supreme Court held that an individual's pursuit and receipt of Social Security disability benefits does not automatically estop the recipient from subsequently pursuing an ADA claim. In that regard, the Court explained:

> [A] plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA claim—at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent

---

[4] Title II of the Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Title II further provides that "[a]n individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A). The Commissioner of Social Security has construed the language of the Social Security Act to mean that an individual who remains capable of performing his or her "past relevant work" is not "disabled," irrespective of whether such work "exists in the national economy." 20 C.F.R. § 404.1520(a)(4)(iv). The Supreme Court has upheld the Commissioner's interpretation as a permissible construction of the Social Security Act. *Barnhart v. Thomas*, 540 U.S. 20, 25-30, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). Therefore, in order to establish her entitlement to benefits under Title II, Eck had to show that she was *unable* to return to her previous work, regardless of whether such work was available in the national economy. *Id.* at 25.

contradiction that arises out of the earlier SSDI total disability claim. Rather, she
must proffer a sufficient explanation.

*Cleveland*, 526 U.S. at 806. The Court described the plaintiff's burden in such a case as follows:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id.* at 807. Consequently, Eck "cannot simply ignore the apparent contradiction" arising from her receipt of Social Security disability benefits on the basis of an *inability* to work and her assertion that she was *able* to perform the "essential functions" of her job at the time of her discharge. *Id.* at 806. Instead, "she must proffer a sufficient explanation" as to why her discriminatory discharge claim under the ADA is not foreclosed by her earlier representations to the SSA concerning her inability to work. *Id.*

As previously discussed, Eck applied for benefits under Title II of the Social Security Act on January 30, 2007. ECF No. 29 at 15. She declared that she had become "disabled" on June 14, 2006. *Id.* This alleged onset date coincided with the first day of Eck's short-term disability leave from her job at Whirley. ECF No. 30 at 20-23. Eck's application constituted a representation to the SSA that she was "disabled" within the meaning of the Social Security Act *before* August 30, 2006. The SSA denied Eck's claim on June 11, 2007. ECF No. 29 at 52-56. Eck completed an appeal form on May 7, 2007, describing her impairments and limitations in greater detail. ECF No. 29 at 57-63. On August 12, 2008, the SSA determined that Eck had been "disabled" within the meaning of the Social Security Act since June 14, 2006. ECF Nos. 25 & 41 at ¶ 46. Eck was awarded benefits that were retroactive to December 2006.[5] ECF No. 29 at 64-72.

Despite the SSA's determination that she was disabled as of June 14, 2006, and her representation to that effect in her application, Eck now claims, in essence, that her onset date for purposes of "disability" under the Social Security Act actually occurred much later because of a

---

[5] The discrepancy between the onset date and the commencement of the entitlement period was attributable to Title II's five-month waiting period. 42 U.S.C. § 423(a)(1)(E), (c)(2). Hence, Eck received Social Security disability benefits in a manner that was consistent with a disability beginning on June 14, 2006.

deterioration in her condition. ECF No. 42 at 13. In that regard, Eck notes that although Dr. Rensel had cleared her to return to work as of September 5, 2006, her condition had subsequently worsened. ECF No. 38 at 7-11. The fact remains, however, that when she applied for benefits under Title II, Eck declared that she had become "unable to work because of [her] disabling condition on June 14, 2006." ECF No. 29 at 15 (capitalization omitted). During the course of a deposition conducted on December 1, 2009, Eck acknowledged that she had listed June 14, 2006, as her alleged onset date. ECF No. 26 at 26. Eck also testified that she had made this representation to the SSA with a full understanding of the Social Security Act's definition of the term "disability." *Id.* at 33. In determining that Eck was statutorily "disabled" as of June 14, 2006, the SSA necessarily concluded that her *inability to work* had lasted (or had been expected to last) for a period of at least twelve months from that date. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Such a finding, coupled with Eck's representation in support thereof, cannot be squared with her present assertion that she was, in fact, capable of performing her job duties at the time of her discharge. Since Eck successfully represented to the SSA that she could not continue to work for Whirley *because of her disabling condition*, no reasonable trier of fact could assume the truth of her representations to the SSA and nevertheless conclude that she was "qualified" for her position within the meaning of the ADA. *Detz v. Greiner Industries, Inc.*, 346 F.3d 109, 120 (3d Cir. 2003).

Importantly, Eck does not attempt to reconcile the conflict between her receipt of Social Security benefits and her present ADA claim on the basis that she was denied a reasonable accommodation.[6] Eck's counsel made that clear that during a telephonic conference conducted on January 24, 2011.[7] ECF No. 50 at 3-4. The fact remains that her present position is

---

[6] As made clear in *Cleveland*, the SSA does not consider the issue of reasonable accommodation in determining whether an individual is or is not disabled. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). Consequently, the inconsistency between the receipt of disability benefits from the SSA and the pursuit of an ADA claim is frequently resolved on the basis of the plaintiff's contention that he or she could have performed the work had a reasonable accommodation been provided.

[7] The colloquy between the Court and Eck's counsel included the following exchange:

    THE COURT:    Let me flip over to Mr. Walsh. I'm trying to get my head around the Cleveland case and how it might relate to this situation. Was there ever a request for an accommodation in the nature of a work schedule modification made by your client or someone on her behalf?

    MR. WALSH:    Your Honor, I don't think so, not in those terms. All it was, was a return to work slip saying she could work five days a week, eight hours per weekday. The day that she was to come back—the day they terminated her was the day before she was to come back. So there was never any discussion. There was

7

manifestly inconsistent with her previous sworn representations to the SSA that she could not perform her job duties as of June 14, 2006, or, for that matter, at the time of her discharge. I find, therefore, that Eck is estopped from contending that she was "qualified" for her position (*i.e.*, capable of performing the "essential functions" of that position, with or without reasonable accommodations) at the time of her discharge. Consequently, the defendant is entitled to summary judgment as to the discriminatory discharge claim.[8]

Based on the previous discussion, I find that Eck is estopped from contending that she was capable of performing the essential functions of her previous position at the time of her discharge. Consequently, I find that the defendant is entitled to summary judgment with respect to the discriminatory discharge claim on that basis, and that consideration of Whirley's alternative argument concerning the issue of pretext need not be addressed.

B.  The "Hostile Work Environment" Claim

Eck alleges that Whirley violated the ADA by subjecting her to a "hostile work environment."[9] ECF No. 1 at ¶¶ 56-57. The ADA prohibits a "covered entity" from engaging in disability-based discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 29 U.S.C. § 12112(a). In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 63-69, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court recognized that an

---

|  |  |
|---|---|
|  | some of this, she had the benefit of an exit conference and they let her know that she was being terminated. There was some testimony about that, some indication, you know, with my doctor. There wasn't any discussion like is talked about under the regulations or the case law about this collaborative or interactive process under the ADA, it never got that far. |
| THE COURT: | Just to wrap up, so I'm clear, rather than the accommodation issue that normally comes up under Cleveland, by way of a proffered explanation as to why it's not inconsistent, you're not going there in this case, you are basing your argument that it is not an inconsistency, based on the subsequent deterioration in her condition? |
| MR WALSH: | Yes, I think that's fair, your Honor. She was ready to come back when this happened. |

ECF No. 50 at 3-4.
[8] Given my conclusion that Eck has failed to make out a *prima facie* case, it is unnecessary to reach Whirley's alternative argument that summary judgment is appropriate on the basis of Eck's failure to have raised a triable issue of fact as to pretext.
[9] At oral argument, it appeared that counsel for Eck had conceded that the "hostile work environment" claim was not viable. ECF No. 49 at 32. Further, Eck failed to respond in her brief to the defendant's arguments as to why the "hostile work environment" claim failed. Nevertheless, I address the merits in the event that it was not Eck's intention to abandon the claim.

8

employer *discriminates* against an employee *because of his or her sex*, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") [42 U.S.C. § 2000e *et seq.*], when it engages in sex-based harassment that is sufficiently "severe or pervasive" to alter the "terms, conditions, or privileges" of his or her employment.[10] The reasoning employed in *Meritor Savings Bank* has been applied in *Walton v. Mental Health Association of Southeastern Pennsylvania*, 168 F.3d 661, 666-667 (3d Cir. 1999), an ADA case claiming disability-based harassment.[11] Harassment which does not alter the "terms, conditions, and privileges" of one's employment, however reprehensible it may be, does not violate a federal civil rights statute such as Title VII or the ADA. *Meritor Savings Bank*, 477 U.S. at 67. An isolated incident amounts to a change in the "terms, conditions, and privileges" of one's employment only if it can be fairly characterized as "extremely serious." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Federal law prohibits only those forms of discriminatory harassment that are severe or pervasive enough to create a hostile or abusive work environment. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).

The inquiry as to whether an employee's work environment is sufficiently hostile or abusive to constitute an actionable statutory violation encompasses both objective and subjective components. In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court explained:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

---

[10] Title VII's anti-discrimination provision declares it to be an "unlawful employment practice" for a covered employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).

[11] In order to proceed with her "hostile work environment" claim under the ADA, Eck must show that she was within the category of persons entitled to statutory protection under that statute. *Barclay v. Amtrak*, 435 F.Supp.2d 438, 448 (E.D.Pa. 2006). She must demonstrate *both* that she was "disabled" within the meaning of the ADA *and* that she was "qualified" for her position (*i.e.*, that she could "perform the essential functions" of her job, with or without reasonable accommodations). Pub. L. No. 101-336, § 101; 104 Stat. 327, 331 (1990)(previously codified at 42 U.S.C. § 12111(8)). Although Eck cannot show that she was "qualified" for her position at the time of her discharge (given her pursuit and receipt of Social Security disability benefits), she was nevertheless "qualified" for her position prior to June 14, 2006. She was still performing the duties of her job before that date. It is undisputed that Eck was "disabled" within the meaning of the ADA as of 1997 or 1998, when medical personnel at the Cleveland Clinic determined that she was suffering from multiple sclerosis.

*Harris*, 510 U.S. at 21-22. This test, which is not "mathematically precise," accounts for all relevant factors. *Id.* at 22. "Such factors include, but are not limited to, whether the alleged discriminatory harassment is frequent, whether it is severe, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance." *Hubbell v. World Kitchen, LLC*, 688 F.Supp.2d 401, 419 (W.D.Pa. 2010), citing *Harris*, 510 U.S. at 23. A plaintiff need not show that discriminatory harassment was *both* severe *and* pervasive to proceed with a "hostile work environment" claim. Instead, he or she need only demonstrate that the harassment at issue was *either* severe *or* pervasive enough to constitute a change in the "terms, conditions, and privileges" of his or her employment. *Jensen v. Potter*, 435 F.3d 444, 449, n. 3 (3d Cir. 2006); *Watkins v. Nabisco Biscuit Co.*, 224 F.Supp.2d 852, 864, n. 19 (D.N.J. 2002).

In her complaint, Eck alleges that she "had to fight for vacation time" shortly after the commencement of her employment. ECF No. 1 at ¶ 15. She also alleges that, in 1997, Chief Executive Officer Robert Sokolski ("CEO Sokolski") threatened to fire her for refusing to take actions that she deemed to be in violation of federal copyright laws. *Id.* at ¶ 16. These averments, however, cannot support Eck's "hostile work environment" claim. During the course of her deposition, Eck acknowledged that these incidents had not been motivated by her disability. ECF No. 26 at 116, 127. Indeed, they had preceded the onset of her multiple sclerosis. *Id.* at 116, 117-118. Since the ADA is an anti-discrimination statute, a "hostile work environment" claim arising thereunder must be based on an allegation of disability-based *discrimination*. *Oncale v. Sundower Offshore Services, Inc.*, 523 U.S. 75, 80-81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "In other words, an employer which *indiscriminately* subjects its employees to a hostile work environment commits no violation of [the ADA]." *Hubbell*, 688 F.Supp.2d at 419.

Eck, who suffered from sleep apnea, used a continuous positive airway pressure ("CPAP") machine to treat her condition. She claims that CEO Sokolski once asked her to bring the CPAP machine to work with her so that he could see it, and that he "interrogated" her about how much money it was costing Whirley to pay for the machine through its health insurance plan. ECF No. 40 at ¶ 21. The record contains, however, uncontradicted testimonial evidence indicating that CEO Sokolski's wife was using a similar machine at that time, and that his inquiries concerning Eck's CPAP machine were partially motivated by his desire to learn more

10

about the nature of his wife's treatment. ECF No. 26 at 136-138; ECF No. 41-2 at 31-32. CEO Sokolski acknowledged that he may have inquired as to whether Whirley's health insurance plan could have financed Eck's treatment in a more cost-effective manner. ECF No. 41-2 at 33-36. Both Eck and CEO Sokolski testified that Nixon had been asked to look into the matter. ECF No. 26 at 141-142; ECF No. 41-2 at 36. In any event, Eck testified that Whirly had never interfered with her treatment during the course of her employment. *Id.* at 142-143. Although she was initially denied coverage for birth control pills, which were generally not covered under the plan, coverage for the pills was later provided after Whirley learned that they had been prescribed to treat a bladder infection rather than for pregnancy-prevention purposes. *Id.* at 143-145.

In short, there is no evidence from which a reasonable jury could conclude that Eck that was subjected to a "hostile or abusive" work environment that was violative of the ADA. The record fails to establish that Eck suffered from frequent, severe, humiliating or threatening harassment. *Harris*, 510 U.S. at 23. There is no evidence suggesting that Whirley's conduct unreasonably interfered with Eck's work performance. *Id.* No objectively reasonable employee would have perceived the work environment described by Eck to be "hostile or abusive." *Id.* at 21-22. Indeed, no reasonable trier of fact could find, on the basis of the testimonial evidence, that Eck *subjectively* perceived her work environment to be "hostile or abusive." *Id.* Eck's "hostile work environment" claim is wholly lacking in evidentiary support. Whirley is entitled to summary judgment with respect to that claim.

### C. The Retaliation Claim

The ADA's anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). Given this statutory language, "it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003). Eck's complaint includes a retaliation claim. ECF No. 1 at ¶¶ 58-60.

In order to establish a *prima facie* case of retaliation, Eck must show that: (1) she engaged in statutorily-protected conduct; (2) Whirley took a "materially adverse" action against

her; and (3) there was a causal connection between her statutorily-protected conduct and Whirley's "materially adverse" action. *LeBoon v. Lancaster Jewish Community Center Association*, 503 F.3d 217, 231 (3d Cir. 2007). An action is considered to be "materially adverse" to an employee if it might have dissuaded an objectively reasonable employee from engaging in statutorily-protected conduct. *Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 67-71, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). It is axiomatic that a "discharge" constitutes a "materially adverse" action. *Johnson v. McGraw-Hill Companies*, 451 F.Supp.2d 681, 711 (W.D.Pa. 2006). Therefore, Eck's ability to establish the second element of her *prima facie* case is not disputed. ECF No. 24 at 22-24. Only the first and third elements are at issue.

With respect to the first element, Eck must show that she "opposed" illegal discrimination. 42 U.S.C. § 12203(a). Referring to Title VII's anti-retaliation provision in *Crawford v. Metropolitan Government of Nashville & Davidson County*, ___U.S.___, 129 S.Ct. 846, 851, 172 L.Ed.2d 650 (2009), the Supreme Court indicated that an employee's "opposition" to discriminatory conduct need not be "active" in order to qualify for statutory protection. Speaking through Justice Souter, the Supreme Court explained:

> "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation, or are said to "oppose" capital punishment today, without writing public letters, taking to the streets, or resisting the government. And we would call it "opposition" if an employee took a stand against an employer's discriminatory practices not by "instigating" action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons.

*Crawford*, 129 S.Ct. at 851. Thus, while Eck's opposition need not have been "active" or "consistent," she must demonstrate that, at the time of her "opposition," she was acting pursuant to an objectively reasonable belief that the conduct that she was "opposing" was in violation of the ADA. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996). While it is not necessary for Eck to establish that the underlying conduct of which she complained was *actually violative* of the ADA, she cannot maintain a retaliation claim by showing that she "opposed" conduct that was

obviously legal. *Clark County School District v. Breeden*, 532 U.S. 268, 271-272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *Hubbell*, 688 F.Supp.2d at 436.

In this case, I agree with Whirley that Eck's retaliation claim fails because the record does not support the contention that she engaged in any protected activity and was terminated as a result. Eck appears to base her retaliation claim on complaints that she voiced after receiving Nixon's letter of February 3, 2006.[12] ECF No. 40 at ¶ 23. In his letter, Nixon merely informed Eck of the statutory rights that she enjoyed under the FMLA. ECF No. 30 at 24. Enclosed with the letter were completed forms requesting medical documentation related to an anticipated application for medical leave. *Id.* at 25-26. There are no grounds upon which Nixon's letter could be construed as violative of the ADA. Consequently, it was not objectively reasonable for Eck to have concluded that she was "opposing" conduct potentially violative thereof.

## IV. CONCLUSION

For the foregoing reasons, Whirley's motion for summary will be granted in its entirety. An appropriate order follows.

---

[12] Eck's brief contains no discussion about the retaliation claim. ECF No. 42.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CHRISTINE A. ECK, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Civil Action No. 08-330 Erie |
| WHIRLEY INDUSTRIES, INC., | ) ) ) |  |
| Defendant. | ) |  |

## ORDER

AND NOW, this 28th day of January, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment (*Document No. 23*) is GRANTED. JUDGMENT is hereby entered in favor of the Defendant, Whirley Industries, Inc., and against the Plaintiff, Christine A. Eck.

The clerk is hereby directed to mark the case closed.

s/Sean J. McLaughlin<br>
United States District Judge

cc: All counsel of record